UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVERYTHING BASEBALL LIMITED, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5526 |
| | ) |
| TEAM ATHLETIC GOODS, INC., | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

**ORDER**

Thomas Serewicz and Sam Gallucci invented and patented a baseball chest protector that incorporates shoulder guards to protect the top and back areas of a catcher's shoulders from deflected baseballs. Plaintiff Everything Baseball Limited, LLC, the assignee of the patent, U.S. Patent No. 6,161,226 (the "'226 Patent"), charges Defendant Team Athletic Goods, Inc. ("TAG"), a major supplier of baseball chest protectors, with selling chest protectors that infringe the '226 Patent. The parties have submitted claim construction briefs, and await the court's ruling on that issue. Six months after claim construction was fully briefed, TAG moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff had no interest in the '226 patent when suit was filed and therefore lacks Article III standing. In this Order, the court addresses only TAG's Rule 12 motion, and, as explained below, denies the motion.

**BACKGROUND**[1]

Serewicz and Gallucci filed a patent application for their chest protector on September 15, 1999. ('226 Patent, Ex. G to Pl.'s Resp.) On June 28, 2000, they formed an Illinois limited liability

---

[1] As explained *infra*, because TAG challenges Plaintiff's standing on a factual basis, the court looks beyond the pleadings and draws the facts presented here from the materials the parties have submitted with their briefs. The court presents only those facts relevant to the pending motion, however.

company, Everything Baseball Limited, LLC ("EBL LLC").[2] (Articles of Organization, Ex. B to Pl.'s Resp.) Shortly thereafter, on July 11, 2000, Serewicz and Gallucci signed a document, titled "Assignment," purporting to assign all rights to the '226 Patent to an Illinois "corporation" called Everything Baseball Limited, *Ltd.* ("EBL Ltd."). (Assignment, Ex. C to Pl.'s Resp. (emphasis added).) No entity with this name exists; the only entity with the name "Everything Baseball" that has been formed under Illinois law is EBL LLC. *See* http://www.ilsos.gov/corporatellc/ (online search of Illinois Secretary of State records, entering search term "Everything Baseball", returns only EBL LLC). The Patent and Trademark Office ("PTO") recorded the assignment on October 23, 2000, at Reel 011193, Frame 0173, listing EBL Ltd. as the assignee. (Notice of Recordation of Assignment Document, Ex. F to Pl.'s Resp.) The '226 Patent issued on December 19, 2000, and similarly listed EBL Ltd. as the assignee. ('226 Patent.)

On July 14, 2000, and again on October 3, 2001, TAG entered into licensing agreements in which it agreed to pay a royalty for each chest protector, made and sold by TAG, that was covered by the subject matter claimed by the '226 Patent.[3] (Licence Agreements, Exs. E & H to Pl.'s Resp.) TAG referred to these chest protectors in the agreements as the "Saddle Shoulder" model. (*Id.*) Each agreement lists ELB Ltd. as the licensor. (*Id.*) Subsequent royalty payments from TAG were addressed to "Everything Baseball LTD." (Ex. I to Pl.'s Resp.)

With the licensing agreement set to expire on October 3, 2004, TAG sent a letter to Gallucci on September 29, 2004, informing him that TAG would not renew the agreement because TAG

---

[2] It is unclear whether Serewicz and Gallucci are the only members of EBL LLC; the Articles of Organization list only a registered agent, and the "LLC File Detail Report" for EBL LLC on the website of the Illinois Secretary of State similarly provides only the name of the agent. *See* http://www.ilsos.gov/corporatellc/ (providing search service for Illinois corporations and limited liability companies).

[3] TAG executed a sublicense agreement with Mizuno USA, Inc. on January 1, 2002, that refers to EBL Ltd. as the "patentee." (Sublicense Agreement, Ex. 6 to Def.'s Mot.) Although Plaintiff initially joined Mizuno as a defendant in this suit, Mizuno was dismissed by stipulation on December 7, 2005. *See* Dkt. No. 20.

expected no "additional sales" of the "Saddle Shoulder" in 2005. (Letter from Swangard to Gallucci of September 29, 2004, Ex. J to Pl.'s Resp.) As with previous correspondence from TAG, the letter was addressed to "Everything Baseball LTD." (*Id.*)

Plaintiff filed suit on September 23, 2005, alleging that TAG continued, after expiration of the licensing agreements, to sell chest protectors covered by the subject matter of the '226 Patent. (Compl. ¶ 16.) ELB LLC is the named Plaintiff in this action. At some point in the course of discovery—neither party identifies when—an issue emerged as to the distinction between ELB LLC and ELB Ltd. In Serewicz's deposition, taken on July 6, 2006, he answered "no" when asked if he knew "what the difference is between LLC and LTD." (Serewicz Dep., at 36-37.) He further testified that he had "never heard of" a company called "Everything Baseball Limited, LLC." (*Id.* at 37.) Gallucci, conversely, testified the following day that he knew of no company called "Everything Baseball Limited, Ltd." (Gallucci Dep., at 6.) In a letter dated July 27, 2006, TAG's attorney asked Plaintiff's attorney to "clarify the ambiguity between the two different entities." (Letter from Pine to Grossman of July 27, 2006, Ex. 11 to Def.'s Mot.) Plaintiff's attorney responded by e-mail on September 7, 2006, explaining that a "typographical error" had resulted in EBL Ltd., rather than EBL LLC, being listed as the assignee of the '226 Patent on the Assignment, and that Plaintiff "[would] be filing a corrected assignment." (E-mail from Grossman to Pine of September 7, 2006, Ex. M to Pl.'s Resp.)

Plaintiff did not do so, however, until March 16, 2007—nearly eight months after TAG sought clarification of the "ambiguity," and exactly one week after TAG filed the instant motion to dismiss. According to the Manual of Patent Examining Procedure ("MPEP"), an error in an assignment document recorded by the PTO "will be corrected" upon the filing of a "corrective document," consisting of a copy of the original assignment document, with corrections initialed and dated by the party conveying the interest, and a PTO cover sheet. MPEP § 323. Plaintiff filed such a corrective document with the PTO on March 16, 2007: the "Ltd." is crossed off, and "LLC" has

3

been handwritten in its place, accompanied by the requisite date and initials. (Corrective Assignment, Ex. P to Pl.'s Resp.) Along with the Corrective Assignment, Serewicz and Gallucci submitted a joint affidavit to the PTO, stating that "our intention on July 11, 2000 was to transfer our rights to Everything Baseball Limited, *LLC*, rather than Everything Baseball Limited, *Ltd.*, and it was only through inadvertence that we didn't notice the typographical error incorrectly listing the name of the entity as *Ltd.*, instead of *LLC*." (Joint Aff. ¶ 4 (emphasis in original).) The PTO recorded the Corrective Assignment the same day, on March 16, 2007. (Notice of Recordation, Ex. R to Pl.'s Resp.) The Notice of Recordation states that it records a "corrective assignment to correct the name of assignee previously recorded on Reel 011193 Frame 0173." (*Id.*)

## DISCUSSION

**I.   Standing**

The question of whether a party has Article III standing to invoke the jurisdiction of a federal court is a matter of federal law, and "standing is to be determined as of the commencement of suit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992)). Because the party seeking to invoke federal jurisdiction bears the burden of establishing standing, *see Lujan*, 504 U.S. at 561, the plaintiff must "support[] the allegations necessary for standing with 'competent proof.'" *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) & *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.), *cert. denied*, 515 U.S. 1104 (1995)). Thus, when considering a Rule 12(b)(1) motion challenging the factual basis for standing, the court may look beyond the pleadings and will consider all competent evidence. *See New Medium Techs. LLC v. Barco N.V.*, No. 05 C 5620, 2007 WL 2020169, at *2 (N.D. Ill. July 5, 2007) (citing *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002)); *see also Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th

Cir. 1993) (when presented with factual attack to jurisdiction, court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."). Such "competent proof" requires a showing by "a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Retired Chicago Police Ass'n*, 76 F.3d at 862 (citing *NLFC*, 45 F.3d at 237).

To assert standing in an action for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit. *Paradise Creations*, 315 F.3d at 1309. The plaintiff must thus be the owner of the patent, or a successor in title such as an assignee, or an exclusive licensee. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001); *DePuy, Inc. v. Zimmer Holdings, Inc.*, 384 F. Supp. 2d 1237, 1238 (N.D. Ill. 2005) (Posner, J.) (citations omitted)). Where the plaintiff holds no enforceable rights in the patent at the time it filed suit, the plaintiff lacks the cognizable injury necessary to assert standing. *Paradise Creations*, 315 F.3d at 1310. The Federal Circuit has held that in such circumstances, the plaintiff cannot cure the standing defect by adding a party who has standing, nor by subsequently purchasing an interest in the patent in suit; the suit must be dismissed. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citations omitted).

TAG contends that at the time Plaintiff filed suit on September 23, 2005, Plaintiff had no rights in the '226 Patent because the Assignment lists EBL Ltd., rather than EBL LLC, as Serewicz's and Gallucci's assignee. (Def.'s Mot., at 5-6.) Thus, TAG urges, Plaintiff—EBL LLC—has no standing to sue and this action must be dismissed, with prejudice, for lack of subject matter jurisdiction. (*Id.*) TAG further requests that the court either order Plaintiff to pay TAG's fees and costs associated with this motion, or grant leave for TAG to file a petition for such costs. (*Id.* at 6-8.)

Plaintiff responds, first, that the Assignment, like any contract, should be construed

according to the intent of the parties to it, and that the evidence clearly shows Serewicz's and Gallucci's intent to assign the '226 Patent to EBL LLC. (Pl.'s Resp., at 6-8.) The reference to "Ltd." in the Assignment, according to Plaintiffs, was a mere typographical error that was then "carr[ied] over" in subsequent PTO documents and correspondence from TAG. (*Id.* at 3.) Alternatively, Plaintiff argues that the Corrective Assignment sufficiently created standing. (*Id.* at 8.) Finally, Plaintiff urges that if standing cannot be found from either the initial Assignment or the Corrective Assignment, then Serewicz and Gallucci should be added as Plaintiffs in order to establish standing. (*Id.* at 9.)

The court begins by noting that Plaintiff's alternative arguments are likely foreclosed by the Federal Circuit case law noted above.[4] The Corrective Assignment, changing the name of the assignee from EBL Ltd. to EBL LLC, was filed on March 16, 2007—long after EBL LLC filed suit in September 2005. Because a plaintiff who lacked standing at the time suit was filed cannot cure that defect by subsequently obtaining an interest in the patent, *see Schreiber Foods*, 402 F.3d at 1203, the Corrective Assignment—if it indeed gave EBL LLC an interest in the '226 Patent that it did not previously have—"comes too late to confer standing." *Pinpoint, Inc. v. Amazon.com, Inc.*, 347 F. Supp. 2d 579, 581 (N.D. Ill. 2004) (Posner, J.). To the extent Plaintiff argues that the

---

[4] Recently, Judge Posner, sitting by designation in district court, noted that "the Federal Circuit's rulings on issues of patent law bind district courts in cases appealable to that circuit" and assumed that the issue of standing in a patent case was one such issue. *See DePuy*, 384 F. Supp. 2d at 1238 (citing *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-60 (Fed. Cir. 1999) & *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 855-58 (Fed. Cir. 1991)). This court proceeds under that assumption as well. The court notes, however, that as a general matter, the Federal Circuit "applies the procedural law of the regional circuit in matters that are not unique to patent law," *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004), "unless the issue pertains to or is unique to patent law," in which case the Federal Circuit will apply its own law "to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right." *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) (internal quotation marks and citation omitted). The court thus looks to Seventh Circuit authority as well, as noted above, for general principles of standing and the standards applied to Rule 12(b)(1) motions. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (citing cases from regional circuit for the well-established rule that courts may look beyond pleadings when presented with factual jurisdictional challenge under Rule 12(b)(1)).

Corrective Assignment somehow operates retroactively to vest title to the '226 Patent in ELB LLC as of the time of the original Assignment, thus conferring standing as of the time suit was filed, the Federal Circuit has likely foreclosed that possibility, as well. *See Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092 (Fed. Cir. 1998) (written licensing agreement, vesting patent rights in the plaintiff, that was executed after the inception of the lawsuit and which by its terms was retroactive and purported to take effect before the filing of the complaint, did not confer "retroactive standing"). Similarly, if EBL LLC lacked standing when this suit was filed because it had no interest in the '226 Patent at the time, then standing cannot now be created merely by adding Serewicz and Gallucci—assuming, *arguendo*, that they would have standing as the inventors of the '226 Patent—as Plaintiffs in this suit. *Schreiber Foods*, 402 F.3d at 1203 (noting that "if the original plaintiff lacked Article III initial standing . . . the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing"). For Plaintiff to avoid dismissal, then, the court must construe the Assignment to find that Serewicz and Gallucci actually assigned their interest in the '226 Patent to EBL LLC in July 2000, as they claim to have intended, and not to EBL Ltd., as recorded in the Assignment.

The court has little difficulty in concluding that on this record, Serewicz and Gallucci clearly intended to assign their rights in the '226 Patent to EBL LLC. First, there is no evidence that an entity named "Everything Baseball Limited, Ltd." ever existed. Plaintiff asserts that it did not, (Pl.'s Resp., at 1), and although TAG claims that "the entity [EBL Ltd.] existed and conducted business," TAG points only to the fact that the PTO documents and TAG's licensing agreements and royalty letters referred to EBL Ltd. (Def.'s Reply, at 3.) This is entirely consistent with Plaintiff's assertion of a carryover from a typographical error in the Assignment, and in itself reveals nothing about whether EBL Ltd. actually existed as a tangible organization. Significantly, as noted, an online search of Illinois Secretary of State records, entering the search term "Everything Baseball", returns only EBL LLC, *see* http://www.ilsos.gov/corporatellc/; there appears to be no record of EBL Ltd. at

7

all. In contrast, it is undisputed that EBL LLC was organized as a limited liability company under Illinois law and has existed as a legal entity.

Given that the organizing papers for EBL LLC were filed approximately two weeks before Serewicz and Gallucci assigned their rights to the '226 Patent, EBL LLC was almost certainly formed for the express purpose of that assignment. Indeed, the Articles of Organization explicitly state that EBL LLC was organized "to use and/or own patents and provide same by rental or otherwise to others." (Form LLC 5.5, Illinois Limited Liability Company Act Articles of Organization, Ex. B to Pl.'s Resp.) Moreover, the Assignment itself uses language that supports Plaintiff's explanation—and Serewicz's and Gallucci's assertion in their joint affidavit to the PTO—that EBL LLC was intended as the assignee: the inventors stated that they were assigning their rights to a "corporation" organized under Illinois law, and the address of that "corporation" is identical to the address listed for EBL LLC in the state organization papers. Finally, the fact that Gallucci testified in his deposition that he had never heard of EBL Ltd., while Serewicz conversely had no knowledge of EBL LLC, suggests that both inventors contemplated some kind of a single entity called "Everything Baseball," and were simply unfamiliar with the difference between the designations "LLC" and "Ltd." Indeed, Serewicz in his deposition readily admitted such unfamiliarity.

Plaintiff thus urges the court to construe the Assignment in accordance with the assignors' intent, and find that Serewicz and Gallucci actually assigned their rights to ELB LLC in July 2000. Plaintiff cites *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870 (Fed. Cir. 1991), in which the Federal Circuit addressed whether a particular provision in a written agreement constituted an assignment or a license. The court noted that "'[a]n assignment of an interest in an invention secured by letters-patent, is a contract, and like all other contracts is to be construed so as to carry out the intention of the parties to it." *Id.* at 874 (quoting *Nicolson Pavement Co. v. Jenkins*, 81 U.S. (14 Wall.) 452, 456 (1871)). Plaintiff also relies on *Gipson v. Mattox*, No. 05-0601-WS-C, 2007 WL 128741 (S.D. Ala. Jan. 12, 2007), where the plaintiffs—Gipson, an

8

individual, and ChemTech, a corporation—sought a declaration that the patent-in-suit, issued to the defendant, was invalid. *Id.* at *1. The defendant moved for summary judgment, arguing, *inter alia*, that ChemTech lacked standing because Gipson had never validly assigned his patent rights to ChemTech. *Id.* The court determined that Gipson and ChemTech "had endeavored" to complete an assignment prior to the filing of the lawsuit, but that "an apparent drafting error" had inadvertently excluded the patent-in-suit from the scope of the assignment, thus rendering it ineffective with respect to Gipson's rights in that patent. *Id.* at *1, *7 & n.12. Denying summary judgment, the court authorized Gipson and ChemTech to submit a corrected assignment. *Id.* at *1. Further denying the Defendant's subsequent request for reconsideration, the court noted that the record was "devoid of any inference of nefarious plotting, manipulative and opportunistic strategy, or other attempts to 'game the system,'" and that Gipson and ChemTech had "simply failed to get the proper language in their assignment document." *Id.* at *7. The court further explained that dismissing ChemTech for lack of standing would be counterproductive: given the inadvertent error, the equities "would demand that any such dismissal be without prejudice," allowing ChemTech to simply file a new suit, which would then need to be consolidated with Gipson's action. *Id.* at *8. The "resulting delay and expenditure of litigant and judicial resources would be both needless and wasteful, achieving no purpose other than to harass ChemTech as [the defendant] seizes on a technical glitch in the assignment papers to bring about pointless delay." *Id.*

TAG attempts to distinguish *Gipson* by correctly pointing out, as did the court in that case, that at least one plaintiff, Gipson, unquestionably had standing as the claimed true inventor. *Id.* at *7. According to TAG, that fact is sufficient to render the case inapplicable here, where EBL LLC, the only Plaintiff, "had no standing at the time of the filing" of this suit. (Def.'s Reply, at 5.) Notably, however, TAG nowhere responds to Plaintiff's argument that the court should construe the Assignment to find that EBL LLC was intended as the assignee; this would vest EBL LLC with

rights to the '226 Patent as of the time of filing and thereby satisfy the standing requirement. The court, moreover, finds more similarities than differences between this case and *Gipson*. As explained above, the evidence solidly supports Plaintiff's assertion that the reference to "Ltd." in the Assignment was an inadvertent error, and that Serewicz and Gallucci had always intended to assign their rights in the '226 Patent to EBL LLC. There is no indication of any attempt to "game the system" or gain some advantage over TAG in this litigation. Nor would the interests of justice be served by dismissal. Contrary to TAG's assertion, there are no circumstances present that require a dismissal with prejudice. TAG cites *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266 (Fed. Cir. 2004), which noted that dismissal for lack of standing in a patent case "ordinarily" is without prejudice, but that dismissal with prejudice may be appropriate where "'it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem.'" *Id.* at 1269 (quoting *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378 (Fed. Cir. 2002)). Here, however, as in *Gipson*, Plaintiff—armed with the Corrective Assignment, establishing it as the assignee of the '226 Patent as of March 2007 in any event—could easily cure the standing problem upon refiling the case. Dismissal with prejudice is thus inappropriate, especially in light of the evidence showing that the defect in the initial Assignment was almost certainly the result of an inadvertent drafting error. And a dismissal without prejudice would be counterproductive, given that EBL LLC would, in all likelihood, simply refile the case. Dismissal without prejudice would thus do nothing but cause further delay, increase the parties' costs, and needlessly consume judicial resources.

As noted, TAG does not address Plaintiff's argument that the Assignment should be construed according to the intent of the assignors. Instead, TAG relies on cases standing for the proposition that a plaintiff must have enforceable rights to the patent-in-suit at the time the action is filed. *See, e.g., DePuy*, 384 F. Supp.2d at 1240-41 (dismissing—without prejudice—patent infringement suit where plaintiff corporation did not own the patent-in-suit; Judge Posner rejected plaintiff's argument that it had standing due solely to the fact that its wholly-owned subsidiary

10

owned the patent); *Pinpoint*, 347 F. Supp. 2d at 581-83 (concluding that plaintiff had no standing to sue because a third party—a state university—in fact owned the patents at issue; plaintiff had acknowledged that the university's assignment of the patents to plaintiff after suit was filed "c[ame] too late to confer standing," but had unsuccessfully argued that researchers employed by the university, who had purported to assign their rights to plaintiff before suit was filed, were the patent's true owners). Although this proposition is entirely correct, as noted above, it becomes inapplicable if the court were to accept Plaintiff's argument and construe the Assignment to find that EBL LLC indeed was intended as the assignee all along; for then, EBL LLC would have enforceable rights in the '226 Patent as of the time of filing, thus conferring standing.

The court acknowledges that neither *Gipson* nor *Vaupel Textilmaschinen* is directly on point, as those cases did not address the precise issue here: whether an assignment of patent rights that contains an apparent typographic error may be construed according to the true intention of the assignors. Nonetheless, in light of the reasoning that motivated the court in *Gipson*; the general principle, articulated in *Vaupel*, that assignments of patent rights are contracts that are to be construed according to the parties' intent;[5] and the evidence showing that Serewicz and Gallucci

---

[5] In articulating general principles of contract interpretation, Illinois courts have held that "[t]he creation and existence of an assignment is determined according to the intention of the parties and that intention is a question of fact derived from the instruments executed as well as the surrounding circumstances." *Serv. Adjustment Co., Inc. v. Underwriters at Lloyd's London*, 205 Ill. App. 3d 329, 334, 562 N.E.2d 1046, 1049 (1st Dist. 1990); *see also Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (1st Dist. 2000) (in construing contract provisions, "the court's primary objective is to give effect to the intent of the parties at the time the contract was made"). The court acknowledges that as a general rule, where contract language is clear and unambiguous, such intent is ordinarily ascertained exclusively from the plain language of the document, and courts do not consider extrinsic evidence absent any ambiguity in the language. *See Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 604-05 (7th Cir. 2001) (applying Illinois law). Although the court believes that a rigid application of this rule is not required here, given the particular circumstances of this case, the court notes that the Assignment in fact contains some measure of ambiguity as well. Specifically, Serewicz and Gallucci assigned their rights to a "corporation" organized in Illinois. Although Illinois law allows the use of abbreviations of the terms "corporation", "company", "incorporated", and "limited" for corporations, *see* 805 ILCS 5/4.05, one does not ordinarily find "Ltd." attached to such entities in modern times; "Inc." and "Corp." are much
(continued...)

always intended to assign their rights to ELB LLC, and that the inclusion of "Ltd." in the Assignment was a drafting error, the court is comfortable in construing the Assignment, at least for purposes of the instant motion, to find that ELB LLC was the assignee from July 2000 forward. Plaintiff thus did not lack standing when this suit was filed. *See Marseilles Hydro Power LLC v. Marseilles Land and Water Co.*, No. 00 C 1164, 2004 WL 1199890, at *3 (N.D. Ill. June 1, 2004) (rejecting, as "easily disposed of," defendant's argument in water rights case that plaintiff, "Marseilles Hydro Power," lacked standing in part because a typographical error assigned the relevant interest to "Midwest Hydro Power.")

## II.     TAG's Request for Fees and Costs

TAG maintains that Plaintiff should pay its fees and expenses for "forcing TAG to file this motion." (Def.'s Reply, at 6.) TAG points out that Plaintiff took no action to correct the typographical error in the Assignment until after TAG filed its Rule 12 motion, and long after TAG first brought the issue to Plaintiff's attention. (*Id.*) TAG thus requests "reasonable attorney's fees and costs associated with this motion," or leave to file a petition for such fees and costs. (*Id.*)

The court does find it troubling that Plaintiff waited so long to file the Corrective Assignment. Indeed, despite counsel's promise to do so in September 2006, Plaintiff apparently was spurred into action only by TAG's filing of this motion six months later. And given that standing is a threshold jurisdictional issue, TAG was indeed obligated to bring that issue to the court's attention. But TAG has not acknowledged that the Corrective Assignment cured the standing problem, assuming that one existed; and, as explained earlier, the court agrees that it would not. The court is not persuaded, therefore, that TAG would not have filed this very same motion even if Plaintiff

---

[5](...continued)
more common, and "Ltd." is typically found appended to the names of privately held companies in the United Kingdom. *See* Companies Act, 2006, c. 46, § 59 (Eng.) ("The name of a limited company that is a private company must end with 'limited' or 'ltd.') (available at http://www.opsi.gov.uk/acts/acts2006/60046--f.htm).

had filed the Corrective Assignment immediately after the issue came to light during discovery. The parties' substantive positions would have been identical: the Corrective Assignment would still have come too late to confer standing, having been filed after this inception of this suit. The parties would have made the same arguments, and the court would have engaged in the same analysis. In short, nothing would have changed. The court thus concludes that Plaintiff's delay in filing the Corrective Assignment does not warrant an award of fees and costs to TAG at this time.

## **CONCLUSION**

For the foregoing reasons, TAG's motion to dismiss (58) is denied.

ENTER:

Dated: August 16, 2007

_____
REBECCA R. PALLMEYER
United States District Judge